UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

UNITED STATES OF AMERICA                CRIMINAL NO. 16-cr-00252

VERSUS                                  JUDGE FOOTE

CLINTON BLANCHARD                       MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Defendant Clinton Blanchard is charged with one count of possession of child pornography. Before the court is Defendant's Motion to Suppress. Doc. 22. For the reasons that follow, it is recommended that the motion be denied.

**The Facts**

An evidentiary hearing was held on February 14, 2017. The evidence at the hearing established the following facts.

The FBI in Buffalo, New York was contacted by a concerned citizen who said he or a friend had received a communication on a dating website, meet24.com, containing child pornography. The citizen stated that the images depicted very young children being sexually abused by adults. The citizen identified a Kik (a chat-type app) username and email account associated with the communication.

The FBI in Buffalo issued a subpoena to Kik and the email provider to identify the IP address associated with those accounts. Further investigation revealed that the IP account

was associated with an address in Many, Louisiana, so the FBI in Buffalo transferred the investigation to the FBI office in Shreveport.

FBI Agent Stephanie Bullard, assisted by FBI Agent Chris Plants, drove to the Many, Louisiana address to try to interview the residents. The FBI does not work frequently in the Many area, so the agents asked for support from the Sabine Parish Sheriff. Two or three uniformed deputies escorted the agents to the residence.

The agents arrived at the residence on March 30, 2016 around 9:00 a.m. No one was home at the time, but a neighbor provided a phone number and stated that the residents would return home later. The agents called that number and left a voice mail. The agents left the area.

The residents of the home called the agents and agreed to speak with the agents at the residence. The agents arrived around 12:30 or 1:00 p.m. Agent Bullard knocked on the front door of the residence, the general area of which is shown in Government Exhibit 1 (photogaph). Defendant answered the door, and Agent Bullard asked him to step outside.

Agent Bullard entered the living room, where she spoke with Defendant's mother for five to 10 minutes. Defendant waited outside with Agent Plants. The mother denied any knowledge of child pornography, but she told Agent Bullard that she once used a dating website known as "Plenty of Fish." She stated that she did not use meet24.com or any other dating-related websites. The interview was very conversational, and the mother did not object to the agents' questions or ask them to leave.

Agent Bullard then went outside to talk to Defendant. She explained to Defendant why they were there and their concern about child pornography coming from that residence. During the 10 to 15 minutes they spent outside, Defendant denied any involvement with child pornography. Agent Bullard asked Defendant if she could look at his phone, and Defendant agreed. He also said that he had a desktop, which he did not use often, but they were welcome to go inside and look at it. This conversation was also conversational, and there were no threats or intimidation used by the agents.

In Defendant's bedroom, Defendant turned on the computer so the agents could observe what was generally installed on the computer. Agent Bullard testified that the computer was an older model that ran very slowly. She saw nothing to indicate the presence of child pornography on the computer.

Agent Plants suggested to Defendant that he should tell them the truth about child pornography. At that point, Defendant closed his bedroom door (to prevent his mother from hearing) and confessed to sending child pornography using the program Kik. Defendant asked what would happen to him. The agents told Defendant that he was not under arrest and that he should go about his life until he heard back from them. He signed a consent form (Government Exhibit 2) allowing the agents to take his cell phone and iPod for a search. The agents later obtained a federal search warrant to examine Defendant's cell phone and iPod. Child pornography was located on the micro SD card installed in Defendant's phone.

The agents had no further contact with Defendant until a federal grand jury returned this indictment. The agents arrested Defendant and read him his <u>Miranda</u> rights. Defendant again spoke freely with the agents.

**Defendant's Motion**

Defendant's Motion to Suppress argues that Defendant was "in custody" at the time of the initial contact with the agents and, therefore, <u>Miranda</u> warnings were required. Defendant argues that, even though he was not informed he was under arrest, he was not informed that he was *not* under arrest. Defendant also states that he was never told that he was free to leave or free to refuse to answer questions. Defendant notes that there was a total of five law enforcement officers present, which would lead any unsophisticated citizen to believe that he was not free to leave. As a result these circumstances, Defendant argues that his statements must be presumed to be compelled and should be excluded. He also argues that his consent to the searches and any evidence seized pursuant to his compelled consent must be excluded from evidence at trial.

**Law and Analysis**

A suspect is "in custody" for purposes of <u>Miranda</u> when he is placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest. <u>United States v. Bengivenga</u>, 845 F.2d 593, 596 (5th Cir. 1988) (en banc). The factors relevant to the custody inquiry are: (1) length of the

questioning; (2) location of the questioning; (3) the accusatory, or non-accusatory nature of the questioning; (4) the amount of restraint on the individual's physical movement; and (5) statements made by the officers regarding the individual's freedom to move or leave. United States v. Wright, 777 Fd.3d 769, 775 (5th Cir. 2015). No one fact is determinative. Id.

A consideration of the five factors shows that Defendant was not in custody during the interview with Agent Bullard and Agent Plants.

### Length of Questioning

The Fifth Circuit has stated that the detention of a defendant for approximately an hour raises considerable suspicion. United States v. Harrell, 894 F.2d 120, 124 (5th Cir. 1990). Here, Defendant was never detained, and his interaction with the agents occurred over a considerably shorter period of time. They spent 10-15 minutes outside with Defendant, and probably another 15 or so minutes with Defendant in his room talking with him, looking at his computer, and executing the consent form.

### Location of Questioning

The interview occurred near the front door and inside the bedroom of Defendant's residence. Defendant was not taken to a police station or placed in a law enforcement vehicle.

**Manner of Questioning**

The evidence shows that the agents conducted themselves in a respectful and conversational manner. Although Agent Plants told Defendant that he should "tell the truth," Agent Plants did not do so in an accusatory, condescending, rude, or harsh manner.

**Restraint on Movement**

There was no restraint whatsoever on Defendant's physical movements. He was never handcuffed or restrained. Had Defendant wanted to leave, he would have been allowed to leave.

**Statements by Law Enforcement Regarding Freedom of Movement**

Nothing was said to Defendant to lead him to believe that he could not terminate the interview or leave his home at any time. In fact, before confessing to possessing and sending child pornography, Defendant closed the door to his bedroom in an attempt to shield his mother from that admission. Defendant obviously had no concern with being in his bedroom with the agents.

**Summary**

Based on the foregoing, the undersigned finds that (1) there was no formal arrest of Defendant, and (2) a reasonable person in Defendant's position would not have understood that he was under arrest. At the end of the discussion, Agent Plants told Defendant that he was not under arrest. Accordingly, there is no basis to suppress any of Defendant's statements to Agent Bullard and Agent Plants.

**Defendant's Consent**

Defendant makes a related argument that his consent to search was tainted by the "in custody" interrogation without the benefit of Miranda. That argument fails for the same reasons stated above. Furthermore, the evidence shows that Defendant freely and voluntarily signed a written consent to the seizure and search of his cell phone.

**Conclusion**

Defendant was not in custody at the time of his confession to possessing and sending child pornography, so agents were not required to administer Miranda warnings before questioning Defendant. Accordingly;

**IT IS RECOMMENDED** that Defendant's **Motion to Suppress (Doc. 22)** be denied.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 45(b). A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error,

from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 17th day of February, 2017.

Mark L. Hornsby
U.S. Magistrate Judge